FILED
 2010 May-27  PM 02:18
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TERRY LEE ROLLINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 09-G-0881-E |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION**

The plaintiff, Terry Lee Rollins, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Disability benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether he has a severe impairment;

    (3)    whether his impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform his past work; and

>  (5) whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ Michael L. Levinson determined the plaintiff met the first two tests, but concluded that while he has an impairment or impairments considered "severe," his impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 12]. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." Foote, at 1559.

**THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN**

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony

must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human

Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

## DISCUSSION

ALJ Levinson found that the plaintiff "has the following severe impairments: Depression, status post lumbar fusion. . . ." [R. 11]. The plaintiff

underwent a lumbar fusion for spondylolisthesis in June 2005.  His back pain persisted through physical therapy for two months (eight sessions) but stated his low back pain was even worse.  [R. 120].  In May 2006, the plaintiff reported that his pain was a two at rest but an eight or nine with activity.  On June 20 and 21, 2006, a physical therapist, T. Rashad Pearson, performed a Functional Capacity Evaluation.  Pearson concluded an ability to work in the light to sedentary range.  [R. 126].  However, his opinion was that "Mr. Rollins thinks he can do more than he actually demonstrated."  [Id.].

> Based on client's physical abilities, he would not be able to sustain gainful employment due to his physical ailment.  Mr. Terry Rollins demonstrated physical effort that <u>partially</u> meets the criteria for light demand work and sedentary demand work on this 2 day test, <u>but his level of pain and discomfort would not allow him to be productive</u>.  Mr. Rollins seems to experience the most unbearable pain and discomfort after he completes or attempts an activity, therefore daily work would not be tolerated well.
>
> \*     \*     \*
>
> There is residual low back and left lower extremity pain and bilateral LE weakness that significantly limit Mr. Rollins' physical abilities<u>.  Mr. Rollins has a moderate rating of constant pain that increases during and even more so after physical activity</u>.

[R. 126-128](emphasis added).

On October 30, 2006, treating surgeon Thomas A. Wilson, Jr., M.D., noted the plaintiff "continues to have a significant amount of back pain."  [R. 349].  A November 16, 2006, lumbar myelogram showed "bilateral posterior intrapedicular screws and short rods at L5-S1 with grade I spondylolisthesis.  There is no evidence of hardware failure.  There is no nerve root truncation or evidence of disk herniation."  [R. 346].  On

January 4, 2007, Dr. Wilson prescribed Lortab and a Medrol Dosepak. [R. 342]. The plaintiff continued to report good and bad days, and in October 2007 Dr. Wilson agreed to refer him to pain management. [R. 338].

In January 2008, the plaintiff began pain management with Thomas Ryder, M.D. [R. 239-240]. He reported pain at nine, with a low at three, with an average of five. "He states he feels completely imprisoned by his pain." [Id.]. Daniel Doleys, M.D., of the Doleys pain management clinic, was of the impression that the plaintiff had "persistent back and left leg pain; status post PLIF L5-S1; pain mixed [nociceptive] neuropathic features; depression moderate to severe; pain secondary to medical/psychological factors." [R. 238].

On September 2, 2008, Dr. Ryder wrote a "To Whom It May Concern" letter in which he stated:

> I have been treating Mr. Rollins for his chronic pain. This involves his lower back and left leg. His pain is moderate to severe on a regular basis. With regards to his pain alone, I believe that it would prohibit him from being in the workplace on a regular basis. Accordingly, it would be hard to hire someone who would have so many absences as to make his employment useless. In addition, were he to be in the workplace with pain of this significant severity, I believe that it would distract him to such a degree that it would cause him to be a direct threat to self and others. In addition, he's on a number of very powerful anti-pain medicines, which I believe would cause him to be a risk in the workplace as well.

[R. 366].

The ALJ found that the plaintiff has the residual functional capacity to perform light work:

> Specifically, the [plaintiff] is able to: stand up to 3 hours; walk up to 3
> hours; sit up to 4 hours; lift/carry 10 pounds consistently, 20 pounds
> frequently, and 30 pounds occasionally; push/pull consistently with the right
> arm and occasionally with the left arm; push/pull frequently with the right
> leg and occasionally with the left leg; occasionally climb, crawl, balance,
> stoop, kneel, and crouch; frequently handle and finger, as well as reach
> overhead; have no more than frequent exposure to fumes and odors; and
> have no more than occasional exposure to extreme cold and heat, wetness,
> vibration, and moving mechanical parts, as well as driving auto equipment.
> The claimant shall avoid heights and high places.

[R. 12]. The ALJ gave no weight to the treating surgeon's opinion:

> The claimant underwent a lumbar fusion for spondylolisthesis, which Dr.
> Wilson noted had helped the claimant's pain and that the claimant was
> walking regularly. Furthermore in 2006, Dr. Wilson rates the claimant with
> a 10% permanent partial impairment to the whole body. Dr. Wilson also
> concurred with the findings of a functional capacity evaluation (FEC)
> [which] found the claimant capable of sedentary to light work. However in
> 2007, Dr. Wilson describes the claimant as unable to perform any
> employment (See Exhibits 2F, 15F, and 16F). This opinion is given no
> weight as there is nothing in Dr. Wilson's treatment notes or in the
> objective medical record to support such a decrease in functioning. I
> further note that after this opinion, the claimant sought pain management
> and admitted his pain had decreased (See Exhibit 13F).
>
> The RFC detailed above at finding 5 is consistent with the findings of Dr.
> Hakim's consultative examination at Exhibit 18F. Dr. Hakim bases the
> above limitations on the exam findings of: a slightly antalgic gait; a
> positive straight leg raise on the left side around 90 degrees; decreased
> sensation in the left foot; trouble with heel and toe walking; left arm
> weakness; and pain in the left lower extremity with mild weakness. I note
> that Dr. Hakim's assessment is given great weight due to his detailed
> physical examination, as well as its consistency with the objective medical
> record. On the other hand, little weight is given to Dr. Ryder's letter at
> Exhibit 19F that notes that the claimant's chronic pain and medications
> would prevent the claimant from being in the workplace on a regular basis.
>
> Dr. Ryder's treatment notes describe the claimant's pain as controlled by
> pain medications, and the claimant reports increasing activity as a result of
> his increased pain control. No significant problems with energy are noted,

> and the claimant reports that he is getting out of the house more and helping around the house more. There is no mention of limitations due to medication side effects, and pain reduction is noted to be between 50 and 60% with current treatment (See Exhibit 13F).

[R. 12-13]. These conclusions are not supported by substantial evidence.

The evidence of record supports Dr. Wilson's opinion that after lumbar fusion surgery, the plaintiff continued to experience debilitating pain. As stated earlier, in October 2006, Dr. Wilson declared that the plaintiff continued "to have a <u>significant amount of back pain</u>." [R. 349](emphasis added). Dr. Wilson ordered a lumbar myelogram because of "the persistence and progression" of the plaintiff's symptoms. [Id.]. In January 2007 the plaintiff reported an increase in pain and was given narcotic pain medication. [R. 342]. In May 2007 he reported his pain as being worse, despite taking Lortab and Lyrica, which Dr. Wilson refilled. [R. 340]. By October 2007, he continued to have good days and bad days, despite continuing to take Lortab and Lyrica. [R. 338]. Dr. Wilson's referral of the plaintiff to pain management indicates that he thought the plaintiff was suffering from moderately severe pain.

The medical evidence also shows a "longitudinal history of complaints and attempts at relief" that support the plaintiff's pain allegations. See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the

individual's statements."). As Judge Allgood observed in Lamb v. Bowen: "[T]he record is replete with evidence of a medical condition that could reasonably be expected to produce the alleged pain. No examining physician ever questioned the existence of appellant's pain. They simply found themselves unable to cure the pain." 847 F.2d 698 (11th Cir. 1988).

The ALJ failed to address further evidence of the plaintiff's disability. On August 2, 2006, he was examined by Jo H. Spradling, Ed.S, LPC, NCC, CCM, a vocational consultant and disability analyst, in relation to a workman's compensation claim. [R. 106-108]. Consultant Spradling reported:

> Taking into account the medical evidence in this case, in conjunction with Mr. Rollins['] age, educational background, work history, physical limitations and subjective complaints I believe he is and will remain 100% vocationally disabled from any form of sustained gainful employment in the competitive labor market. I am also of the opinion that he is not a suitable candidate for vocational rehabilitation/retraining unless he becomes able to more effectively control his pain level and increase his physical capacities.

[R. 107-108]. Additionally, the ALJ failed to address the September 28, 2006, consultative physical examination by Anthony J. Fava, M.D. Dr. Fava's examination revealed "straight leg raising test is positive on the right at 45 degrees, positive on the left at 50 degrees; ROM is decreased. . . ." [R. 194]. Dr. Fava's diagnosis was chronic low back pain, history of spinal fusion, L4-L5, spondylolisthesis of lumbar spine by history, and probable peripheral neuropathy of the left, upper extremity. [R. 195]. Dr. Fava continued:

> This claimant is able to perform the following work related activities: sitting, standing, and walking for less than 30 minutes, lifting, carrying, and handling objects with the right arm, hearing and speaking, he is unable to travel. Currently unable to lift, carry, handle objects over 1 lb. with his left arm.

[Id.].

In this case, the ALJ did not mention, nor did he properly apply, the Eleventh Circuit pain standard. The medical records show the presence of a condition, Grade I Spondylolisthesis, Status Post Lumbar Fusion, that could reasonably be expected to cause disabling pain. The plaintiff consistently reported pain that rose to a level of eight or nine with activity, even on narcotic pain medication. With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012. The vocational expert (VE) testified that pain at the level testified to by the plaintiff and the concurrent side effects of his pain medication would eliminate all job opportunities. [R. 26].

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes

disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed. Id.

DONE and ORDERED 27 May 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.